UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DJ ST. JON on behalf of herself and all others similarly situated,<br><br>                                  Plaintiffs,<br><br>v.<br><br>TIMOTHY J. TATRO ET AL.,<br><br>                                  Defendants. | Case No.: 15-cv-2552-GPC-JLB<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATIOIN FOR TEMPORARY RESTRAINING ORDER**<br><br>[ECF No. 32] |

     Before the Court is Plaintiff DJ St. Jon's ("Plaintiff's") ex parte application for a temporary restraining order and an order to show cause regarding a preliminary injunction. (TRO Mot., ECF No. 32.) Defendants Vincent J. Bartolotta, Jr, Karen Frostrom, Timothy J. Tatro, Tatro & Zamoyski, LLP, Thornes Bartolotta & McGuire, Peter A. Zamoyski (collectively "Class Counsel"); City of San Diego, a California municipality (the "City"), Jan I. Goldsmith, City Attorney for San Diego, Donald R. Worley, Assistant City Attorney for San Diego, and John E. Riley, Deputy City Attorney for San Diego (collectively the "City Defendants"); and Defendants, M.D. Scully; William Rathbone; Timothy Branson; and Gordon Rees Scully Mansukhani, LLP doing business as Gordon & Rees (collectively "Gordon Rees Defendants") filed separate oppositions on January 13, 2016. (Opp'ns, ECF Nos. 38-40.) The Court held a hearing the same day. (*See* ECF No. 41.) Having

considering the parties' briefs and oral argument, and the applicable law, the Court **DENIES** Plaintiff's application for a temporary restraining order.

## BACKGROUND

The action follows a protracted litigation over the fate of the De Anza Cove mobilehome park ("De Anza Park"). The crux of Plaintiff's action is that Defendants violated Plaintiff's due process rights by conspiring to reach a "settlement" regarding an award of attorney fees without a preliminary approval or fairness hearing as required by California Rule of Court 3.679. Specifically, Plaintiff contends that Class Counsel and City Counsel "agreed to mutually forego their right to appeal in exchange for such corresponding promises not to appeal in exchange for City Counsel agreeing to [Class Counsel] receiving nearly $8 million in attorneys' fees." (TRO Mot. at 1, ECF No. 32)

On October 22, 2003, the City of San Diego announced its intent to close De Anza Park. On November 18, 2003, the De Anza Homeowners Association ("HOA") retained Class Counsel and filed a putative class action against the City of San Diego in state court alleging, inter alia, that the City failed to comply with the notice and tenant impact reporting requirements of the Mobilehome Residency Law ("MRL") and Government Code prior to closing the Park (the "Class Action"). Following a bench trial Judge Hayes issued a "Statement of Decision and Order After Statement of Decision" ("2008 SOD") on or about May 21, 2008. Therein, the court determined that the Relocation Standards and Procedures of the San Diego Housing Commission as adopted by the City in 1995 (P.O. 300.401) applied to the closure of the park.

On May 30, 2014, Judge Hayes issued a Decision on Matter Under Submission ("2014 Decision"). Therein, the court determined the steps to be taken by the City to mitigate the adverse impact of closure on the members of the Class Action, including the payment of monetary relocation compensation.

On August 20, 2015, after consideration of the City's objections to De Anza Class' proposed judgment and the City's subsequently filed proposed judgment, the court entered a Judgment.

On September 18, 2014, the De Anza Class filed a motion for a new trial, which the Court denied on October 16, 2014.

Also on October 16, 2014, the court entered an Amended Judgment correcting Paragraph 18 of the Judgment attempting to bind non-class members to the Judgment. Therein the court ordered that the City shall within 90 days of entry of judgment serve a 12 month notice of park closure on all homeowners and residents to vacate the park. (Twelve (12) Month Notice of Termination of Tenancy ("12 Month Notice"), ECF No. 32-2.) At that point the amount of attorney fees and costs had not been determined. The Notice was provided to residents on January 14, 2015 and stated: "The Park shall be closed at the expiration of twelve (12) months from the date of this Notice, or on January 13, 2016. All spaces in the Park must be vacated on or before that date." (Notice, ECF No. 32-2.)

The parties entered into a "Stipulation to Award Prevailing Party Attorneys' Fees" ("Stipulation") on or about November 12, 2014. (Stipulation, ECF No. 1-10.) Counsel presented the Stipulation to the Court at an ex parte hearing November 13, 2014, and Judge Pressman awarded attorney fees to Class Counsel in the amount of $7,716,510 the same day. (*Id.*) Also on November 13, 2014, the Amended Judgment dated October 16, 2014 was interlineated to include the amount of attorney fees awarded. (ECF No. 1-7.)

Notice of Final Judgment was sent to Class Members on November 14, 2014, including disclosure of the attorney fees paid to Class Counsel by the City of San Diego "in addition to the estimated $23,149,529 of compensation and other amounts owed under the terms of the Amended Judgment." (Notice of J., ECF No 1-12.) The Notice of Judgment also stated that, "[t]he City Defendants and Plaintiffs have decided not to appeal, so the Amended Judgment is the final judgment and order of the Court." (*Id.*)

On November 12, 2015, one day before the deadline and the same day she filed the instant action, Plaintiff submitted her compensation claim as a Class Member, fifty percent of which was paid on December 7, 2015, in the amount of $44,684.52.

//
//

## PROCEDURAL HISTORY

On November 12, 2015, Plaintiff filed this action alleging claims of: (1) Violation of Procedural Due Process; (2) Failure to Discharge a Mandatory Duty; (3) Negligence Per Se; (4) Civil Conspiracy; (5) Aiding and Abetting; (6) Civil Conspiracy; (7) Aiding and Abetting; (8) Breach of Fiduciary Duty; (9) Professional Negligence; (10) Violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, et seq.); and (11) Fraud. (ECF No. 1.) On December 5, 2014, Defendants answered. (ECF No. 9.) On January 11, 2016, Plaintiff filed the instant motion for a temporary restraining order which seeks to bar Defendants from:

(1) Evicting any members of the Proposed Class from the De Anza mobilehome park until the actual termination of tenancy for the Aglio Class;

(2) Closing De Anza Park until 30 days before the actual termination of tenancy for the Aglio Class; and

(3) Evicting any homeowners, tenants, residents and other occupants of De Anza park that are presently current on their rent until 30 days before the actual termination of the Aglio Class.

(Mot. TRO at 4-5, ECF No. 32.)

Defendants opposed on January 13, 2016. (ECF Nos. 38, 39, 40.) The Court held a hearing on the TRO the same day. (*See* ECF No. 41.)

## JUDICIAL NOTICE

In support of their opposition to Plaintiff's application, City Defendants filed a request for judicial notice of exhibits attached to the accompanying declaration of Edward C. Walton ("Walton Decl."). (RJN, ECF No. 39-1.) Specifically, City Defendants request that the Court take judicial notice of the following documents:

1. **Exhibit A**, June 22, 2007 Notice of Class Action;
2. **Exhibit B**, 2008 Statement of Decision;
3. **Exhibit C**, November 9, 2012 Special Master's Report Re: Report Re: (A) Rent Differential And (B) Date Class Membership Is Determined Re: Residents Evicted

After September 4, 2007;

4. **Exhibit D**, June 25, 2013 Special Master's Report re: Multiple Issues Pertaining to Closure of De Anza Cove Park;

5. **Exhibit E**, February 2, 2014 Recommendation Of Special Master That Court Grant Approval to (A) Stipulation and Findings re: Class membership Eligibility and Certain Relocation Benefits and Order Thereon; (B) Order on Class Member Status of Certain Signed Settlement Agreements and Evictions Based on Evidence Presented at Trial;

6. **Exhibit F**, May 30, 2014 Statement on Matter Under Submission;

7. **Exhibit G**, August 20, 2014 Judgment;

8. **Exhibit H**, Minute Order denying the De Anza Class' Motion for New Trial;

9. **Exhibit I**, October 16, 2014 Amended Judgment;

10. **Exhibit J**, Stipulated Fee Award;

11. **Exhibit K**, Notice of Entry of Judgment and summary thereof provided to the De Anza Class on October 16, 2014.

(*Id.*)

Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed matters of public record), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)). Courts have routinely taken judicial notice of records filed with the county recorder as well as pleading filed with the state court. *See e.g., Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006); *Liebelt v. Quality Loan Serv. Corp.*, 2011 WL 741056, at *6 n. 2 (N.D.Cal.2011); *Reynolds v. Applegate*, 2011 WL 560757, at *1 n. 2 (N.D. Cal. 2011); *Giordano v. Wachovia Mortg., FSB*, 2010 WL 5148428, at * 1 n. 2 (N.D. Cal.2011).

Here, Plaintiff does not object to City Defendants' Request for Judicial Notice, and

the documents are publically recorded documents or publically available state court filings. Thus, the Court finds that the accuracy of these documents cannot reasonably be questioned. Accordingly, the Court hereby takes judicial notice of Exhibits A-K to the Walden Declaration. (ECF No. 39-3 to 39-11.)

## LEGAL STANDARD

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and the moving party bears the burden of meeting all four *Winter* prongs. *See Cottrell*, 632 F.3d at 1135; *DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

//
//
//

# DISCUSSION

## 1. Likelihood of Success on the Merits

The crux of Plaintiff's claim is that she was deprived of her appellate rights without due process. (TRO Mot. at 12, ECF No. 32.) Specifically, Plaintiff claims that her appellate rights were traded for attorneys' fees without the necessary fairness hearings. A consequence of a loss of appellate rights is that the judgment Class Members could have appealed is now being enforced and requires Plaintiff to move out of De Anza Park by January 13, 2016.

A claim of the deprivation of civil rights has the following elements: (1) the action occurred under "color of state law: and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Here defendant asserts a deprivation of her procedural due process. To prevail on a section 1983 claim for a procedural due process violation, a plaintiff must show deprivation of a protected property or liberty interest without being given due process.

"[T]here has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are bound by it." *Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999). In general, class members' due process right to adequate representation is protected by the certifying court initially, and thereafter by appeal within the state system and lastly by direct review in the United States Supreme Court. *Epstein, supra* at 648. *See, e.g.*, *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1558 (3rd Cir. 1994) (refusing to allow absent class members collaterally to challenge adequacy of representation because the opportunity to challenge that determination by appeal to Delaware Supreme Court, and thereafter to the United States Supreme Court, "granted all the process that was due"); *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33 (1st Cir. 1991) (as long as procedural safeguards were employed, objections to the determinations of a certifying court had to be remedied on appeal to the state supreme court or the United States Supreme Court, and not by recourse to the "federal courts in the vain pursuit of back-door relief").

Here, Class Members vigorously litigated the class action against the City, and after trial prevailed. On November 14, 2014, Plaintiffs were given Notice of Final Judgment to Class Members which included full disclosure of the attorney fees paid to Class Counsel by the City of San Diego "in addition to the estimated $23,149,529 of compensation and other amounts owed under the terms of the Amended Judgment." (Notice of Judgment, ECF No 1-12.) The Notice of Judgment also stated that, "[t]he City Defendants and Plaintiffs have decided not to appeal, so the Amended Judgment is the final judgment and order of the Court." (*Id.*)

City Defendants argue that the notice provided to Class Members afforded them an opportunity to object to the entry of the final judgment and gave them the ability to seek intervention in order to challenge the lack of a class settlement fairness proceeding or the waiver of appeal rights. However, the notice does not specifically state that Plaintiffs have the right to object to the final judgment or move to vacate it. It is not clear at this juncture that these notices "granted all the process that was due." *Grimes,* 17 F.3d at 1558.

At this time, given the arguments of counsel and pleadings, the Court cannot conclude that Plaintiff lacked *any* Constitutionally-protected right to have an appeal. However, neither has Plaintiff demonstrated a likelihood of success on the merits; nor is there a clear nexus between the relief Plaintiff seeks (disgorgement of attorney fees) and the alleged deprivation of due process relating to Plaintiff's appellate rights.

**2.  Irreparable Harm**

"A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)) (emphasis in original); Fed. R. Civ. P. 65(b)(1)(A) (plaintiff must show it faces both "immediate and irreparable injury"). In her motion, Plaintiff argues that she will suffer irreparable harm if the requested TRO is not granted because she will evicted from her home. (ECF No. 32 at 18-19.) Defendants oppose,

contending that Plaintiffs has not shown irreparable harm because Plaintiff delayed moving for a TRO.  (*See*, *e.g.*, City Defs.' Opp'n at 24, ECF No. 39.)

A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Garcia v. Google, Inc.*, 743 F.3d 1258, (9th Cir. 2014) (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g*, 762 F.2d 1374, 1377 (9th Cir. 1985)); *see also Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (noting that delay in seeking injunctive relief "implies a lack of urgency and irreparable harm.")  While Plaintiff's delay is not alone decisive in determining whether he will be irreparably harmed, it is still "weighs against the immediacy of the harm." *AK Metals, LLC v. Norman Indus. Materials, Inc.*, No. 12cv2595-IEG-WGV, 2013 WL 417323, at *10 (S.D. Cal. Jan. 31, 2013) (two-month delay).  Further, ex parte relief is not warranted if the moving party is at "fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Plaintiff's delay in seeking injunctive relief demonstrates lack of irreparable harm. Plaintiff received a Notice of Final Judgment sent to all class members on November 14, 2014, including disclosure of the attorney fees paid to Class Counsel.  (Notice of Judgment, ECF No 1-12.)  The Notice of Judgment also stated that "[t]he City Defendants and Plaintiffs have decided not to appeal, so the Amended Judgment is the final judgment and order of the Court." (*Id.*)  Thus, Plaintiff has been aware that the Class' appellate rights were waived since at least November 2014.  Almost a year later to the day, on November 12, 2015—the day Plaintiff filed the instant action and one day before the deadline to submit claims for relocation assistance—Plaintiff submitted a claim as a Claim Member and agreed to vacate De Anza Park on or before January 13, 2016.  A cover letter from Plaintiff's attorney accompanying her claim specifically stated: "We are likely to seek a temporary restraining order/injunctive relief setting aside the Amended Judgment entered by the San Diego Superior Court on or about October 16, 2014."  (ECF No. 39-10.) However, Plaintiff inexplicably waited until January 11, 2016, two days before the deadline to vacate the premises pursuant to the Termination of Tenancy Agreement she executed.

Plaintiff's assumption that the park would remain open as to the De Anza Class due to the settlement in an unrelated case—the Aglio class action—is unavailing. Plaintiff's protracted delay demonstrates the lack of immediacy and urgency to warrant irreparable harm.

As to the claimed harm, the Court finds that any possible harm is due to Plaintiff's unwillingness to abide by the terms of her relocation agreement. In general, an eviction may result in harm or uncertainty to the person evicted from the home by requiring the displaced person to locate suitable accommodations. In fact, it is apparent that the trial court recognized this possible harm by prohibiting the City from evicting the class members for an entire year and providing the class members half of the settlement monies up front. As such, the trial court took reasonable steps to give class members time to locate alternative accommodations and the funds to secure them. Any harm or inconvenience that Plaintiff faces at this time is based upon her decision to avoid the terms of her agreement that require her to leave the premises by January 13, 2016 and her decision to wait until January 11, 2016 to file her application for a TRO.

Because the Court finds Plaintiff has failed to establish irreparable harm, the Court need not even address the remaining preliminary injunction prongs. *See Cottrell*, 632 F.3d at 1135 ("'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, *so long as the plaintiff also shows that there is a likelihood of irreparable injury* and that the injunction is in the public interest." (emphasis added)).

### 3. Balancing of Equities

Plaintiff contends that the balance of equities tip in her favor because the City will suffer no hardship from allowing Plaintiff to remain on the subject premises and will, instead, benefit. Defendants counter that they have abided by the Amended Judgment and Stipulated Fee Award by accepting relocation agreements, assisting with relocation efforts and paying De Anza Class Members' claims, including Plaintiff's.

On one hand, it appears that the De Anza Park will continue operation until at least

1  July 2016 and a TRO would not have the effect of forcing the City to keep De Anza Park
2  open just for the Plaintiff.  On the other hand, permitting Plaintiff to remain at De Anza
3  Park permits Plaintiff to avoid the terms of her relocation agreement after receiving
4  $44,000 from the City.  Permitting Plaintiff to avoid the effect of her relocation agreement
5  would breed disrespect for the law, discourage the settlement of actions and undermine the
6  binding effect of class action judgments.

**4.    Public Interest**

Plaintiff asserts that issuing a TRO will be in the public interest because (1) it will result in substantial revenue for the City; (2) furthers the interests in ensuring that citizens are not evicted unjustifiably, prematurely and without due process; (3) furthers the interest of having California law s followed and (4) ensures that the Courts fulfill their role in providing checks and balances over local government.  (TRO Mot. at 13-14, ECF No 32.)

Plaintiff has not demonstrated likelihood of success on the merits on her due process claim.  In addition, given Plaintiff's agreement to leave the subject premises in exchange for more than $88,000, any eviction would be justified.  Plaintiff has been on notice of the need to make alternative living arrangements for a year, thus any eviction is not premature.

The Court finds that it furthers the interest of finality and closure to hold class members to their agreements.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not made a clear showing that she is entitled to the extraordinary remedy of a TRO.  *Winter*, 555 U.S. at 22.  The Court therefore **DENIES** Plaintiff's application for a TRO.

**IT IS SO ORDERED.**

Dated:  January 13, 2016

Hon. Gonzalo P. Curiel
United States District Judge