1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                   SOUTHERN DISTRICT OF CALIFORNIA
8

9  DJ ST. JON on behalf of herself and all        Case No.:  15-cv-2552-GPC-JLB
10 others similarly situated,
                                                   **ORDER:**
11                              Plaintiffs,
12 v.                                              **GRANTING DEFENDANTS TATRO
                                                   ET AL.'S MOTION TO DISMISS
13 TIMOTHY J. TATRO ET AL.,                        AND MOTION TO STRIKE**
                                Defendants.
14                                                 **GRANTING DEFENDANTS
15                                                 BARTOLOTTA, JR. ET AL.'S
                                                   MOTION TO DISMISS**
16
17                                                 **GRANTING DEFENDANTS M.D.
                                                   SCULLY ET AL.'S MOTION TO
18                                                 DISMISS**
19
20                                                 **GRANTING DEFENDANTS CITY
                                                   OF SAN DIEGO ET AL.'S MOTION
21                                                 TO DISMISS**
22                                                 **DENYING DEFENDANTS CITY OF
23                                                 SAN DIEGO ET AL.'S MOTION TO
                                                   STRIKE**
24
25                                                 **DENYING DEFENDANTS M.D.
26                                                 SCULLY ET AL'S MOTION TO
                                                   STRIKE**
27                                                 [ECF Nos. 21, 22, 28, 44, 50, 53]
28

                                        1

Before the Court is Defendants Timothy J. Tatro, Tatro & Zamoyski, LLP, and Peter A. Zamoyski's (collectively "Tatro Defendants") Motion to Dismiss ("Tatro Mot."), ECF No. 21; Defendants Vincent J. Bartolotta, Jr., Karen Frostrom, and Thornes Bartolotta & McGuire, LLP's (collectively "Bartolotta Defendants") Motion to Dismiss ("Bartolotta Mot."), ECF No. 22; Defendants M.D. Scully, William Rathbone, Timothy Branson, and Gordon Rees Scully Mansukhani, LLP, doing business as Gordon & Rees' (collectively "Gordon Rees Defendants") Motion to Dismiss ("Gordon Rees Mot."), ECF No. 28; and Defendants City of San Diego, a California municipality (the "City"), Jan I. Goldsmith, City Attorney for San Diego, Donald R. Worley, Assistant City Attorney for San Diego, and John E. Riley, Deputy City Attorney for San Diego's (collectively the "City Defendants") Motion to Dismiss ("City Mot."), ECF No. 44. Plaintiff DJ St. Jon ("Plaintiff") filed a consolidated opposition to all four motions. *See* Pl. Opp., ECF No. 57. Defendants individually replied. *See* Tatro Reply, ECF No. 66; Bartolotta Reply, ECF No. 65; Gordon Rees Reply, ECF No. 63; City Reply, ECF No. 61.

Before the Court is also Gordon Rees Defendants' motion to strike ("Gordon Rees Strike Mot."), ECF No. 50; and City Defendants' motion to strike ("City Strike Mot."), ECF No. 53. Plaintiff filed a consolidated opposition to both motions. *See* Pl. Strike Opp., ECF No. 58. Defendants individually replied. *See* Gordon Rees Strike Reply, ECF No. 62; City Strike Reply, ECF No. 64.

Having considered the moving papers and the applicable law, and for the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss, and **DENIES** Defendants' motions to strike as moot.

## FACTUAL BACKGROUND

The action follows a protracted litigation in California state court over the fate of the De Anza Cove mobile home park ("De Anza Park"), a mobile home park in San Diego's Mission Bay. The crux of Plaintiff DJ St. Jon's ("Plaintiff") action is that Defendants allegedly violated Plaintiff's due process rights by conspiring to reach a "settlement" regarding an award of attorneys' fees without a preliminary approval or fairness hearing as

required by California Rule of Court 3.679.   Specifically, Plaintiff contends that Defendants agreed to mutually forgo an appeal of the state judge's May 30, 2014 "Decision on the Merits" in return for the City Defendants and Gordon Rees Defendants' (collectively "City Counsel") agreement that Tatro Defendants and Bartolotta Defendants' (collectively "Class Counsel") would receive $7,719,510 in attorneys' fees. Compl. 4.

The continuing status of De Anza Park as a mobile home park has been the subject of legal dispute since "during the Jimmy Carter Administration." Compl., Ex. 4. De Anza Park was originally owned by the State of California, which in 1945 granted it to the City of San Diego as a "tidelands trust." *Id.* In 1953, the City granted a 50-year ground lease to a master tenant permitting use of the property for "a tourist and trailer park." *Id.* De Anza Park soon evolved into a mobile-home park with long-term residents. *Id.* In 1978, the City Attorney's Office issued a legal opinion stating that De Anza Park "may be in violation of the tidelands trust [of 1945]" because of its residential users. *Id.* In 1980, the State Lands Commission agreed that "residential use of these lands is not a public use," setting the stage for eviction. *Id.* However, the tenants were given a reprieve in 1981 when the state Legislature decided to allow them to continue living on Mission Bay until the 50-year ground lease expired in 2003. *Id.* On August 27, 1982, the tenants were notified of an eviction date of November 23, 2003. *Id.*

On October 22, 2003, the City of San Diego announced its intent to close the De Anza Park. Compl. 3. On November 18, 2003, the De Anza Homeowners Association ("De Anza Class") retained Class Counsel and filed a putative class action against the City of San Diego in state court. 2014 Amended Judgment, Compl., Ex. 5 at 1. Plaintiff was an absent member of this class. Compl. On August 26, 2005, the De Anza Class filed their third amended complaint. Compl., Ex. 1. On April 20, 2007, the state court found that the City violated its mandatory duty under the state Mobilehome Residency Law ("MRL") and Government Code section 65863.7(e) prior to closing the Park (the "Class Action")  by "failing to prepare a tenant impact report and serve lawful notices that complied with the MRL's timing and content requirements." 2014 Amended Judgment 2. On May 21, 2007,

the state court "declined to refer the matter to the City Council or other legislative body to review the tenant impact report and determine the steps required to mitigate the adverse impacts of Park closure. *Id.* Instead, the state court ruled that it would serve the function of the legislature to review the report and determine the required mitigation. *Id.* On June 22, 2007, notice was disseminated to the class. Compl., Ex. 11. Following a bench trial that began on October 9, 2007, the state court issued a "Statement of Decision and Order" ("2008 SOD") on May 21, 2008. Amended Judgment 3. Therein, the state court: (1) determined that the Relocation Standards and Procedures of the San Diego Housing Commission as adopted by the City in 1995 (P.O. 300.401) applied to the closure of the park; (2) ordered the City to fully comply with the MLR, including the preparation of a Relocation Impact Report ("RIR") to address the mitigation of the park residents' economic hardship resulting from the closure of the park; and (3) provided for the appointment of special master(s) to review the RIR and any other evidence relevant to the question of mitigation of economic hardship of class members, and submit recommendations to the state court for hearing and decision. *Id.*

On February 14, 2014, the court-appointed special master issued three final reports setting forth, *inter alia*, recommendations for the calculation of the appropriate level of mitigation for class members, based on factors such as the size, feasibility of relocation, and ownership or tenancy status of the mobile homes inhabited by class members. *See, e.g.*, Tatro Mot., Ex. 1 at 8–10. On May 30, 2014, the state court issued a Decision on Matter Under Submission ("2014 Decision"). Compl., Ex. 2. Therein, the state court set forth specific criteria for calculating mitigation based on the factors delineated by the special master. *Id.* at 6–7.

On August 20, 2014, the state court entered an Original Judgment based on the 2014 Decision. *See* Original Judgment, Tatro Mot., Ex. 4. Therein, the state court directed in relevant part that "[w]ithin five court days of entry of this judgment, Defendant and Class Counsel shall create a mutually agreed upon Plaintiff Class Member Compensation Spreadsheet ("Compensation Spreadsheet") which will set forth the specific amount of

mitigation to be paid to each Plaintiff Class Member [in accordance with the terms of the Judgment]." *Id.* at 7. The state court directed notice of the Judgment be delivered to the class members within thirty (30) days of the filing of the Notice of Entry of Judgment in accordance with California Rules of Court Rule 3.771(b). *Id.* at 14. The judgment also stated that "Plaintiff is awarded attorneys' fees in the amount of $_____ and costs in the amount of $_____, to be interlineated into the Judgment by cost memorandum and/or noticed motion." *Id.*

On September 9, 2014, Class Counsel submitted a Status Conference Brief to the state court, attaching as an exhibit the "Class Compensation Spreadsheet" calculating mitigation for each class member as requested by the state court. Tatro Mot., Ex. 5. On September 18, 2014, Class Counsel moved for a new trial. Tatro Mot., Ex. 6.

On October 16, 2014, the state court denied the motion for a new trial. City Mot., Ex. H. The state court also entered an Amended Judgment, clarifying that non-class members are not bound by the terms of the judgment. *Compare* Original Judgment 11 *with* Amended Judgment 11, Compl., Ex. 5. The Amended Judgment again left the fees and costs blank. Amended Judgment 14.

On November 12, 2014, Defendants filed a Parties' Proposed Stipulation to Award Prevailing Party Attorneys' Fees ("Stipulation"). Compl., Ex. 9. In relevant part, the stipulation stated:

> 1. The Court, pursuant to its Amended Judgment dated October 16, 2014, has awarded Plaintiffs their attorneys' fees and costs as the prevailing party. Said attorneys' fees and costs are to be paid in addition to the amounts of compensation owed to the Class Members under the Amended Judgment. (See Amended Judgment, ¶27.)
>
> 2. The parties have independently decided not to appeal the Court's Amended Judgment and/or any of the Court's prior rulings and orders . . . . The City of San Diego has conditioned its decision on a determination of a maximum amount of attorneys' fees for which it could be held liable— namely, 33 1/3 % of the compensation called for under the terms of the Amended Judgment—and costs to be determined and awarded by the Court . . . . Plaintiffs Class Representatives and Plaintiffs Class Counsel have agreed to the City's proposed limitation of the attorneys' fees in order to facilitate the

resolution of this class action case . . . . Because the attorneys' fees are being awarded in addition to the compensation and other consideration following to the Class members through the Amended Judgment, there is no known or potential conflict of interest between Class Counsel and the Class members because none of the fees will come from the common fund, but will be separately paid by Defendant as required.

     3.     The total compensation and other amounts owed under the terms of the Amended Judgment is estimated to be $23,149,529, with a corresponding 33 1/3% attorney fee award in the amount of $7,716,510. Defendant City of San Diego and Plaintiffs could not mutually agree on the amount of costs, and therefore costs shall be determined by the Court. . . .

*Id.* at 2–3. Counsel presented the Stipulation to the state court at an ex parte hearing November 13, 2014, and the court awarded attorney fees to Class Counsel in the amount of $7,716,510 the same date. Compl., Ex. 10. Also on November 13, 2014, the Amended Judgment was interlineated to include the amount of attorney fees awarded. Compl., Ex. 6 at 14. Notice of Final Judgment to Class Members was sent November 14, 2014, including full disclosure of the "$7,719,510" in attorney fees paid to Class Counsel by the City of San Diego "*in addition to* the estimated $23,149,529 of compensation and other amounts owed under the terms of the Amended Judgment." City Mot., Ex. K. at 184. The Notice of Judgment also stated that, "[t]he City Defendants and Plaintiffs have decided not to appeal, **so the Amended Judgment is the final judgment and order of the Court**." *Id.*

     On December 1, 2014, the state court awarded $458,078.99 in costs. Bartolotta Mot., Ex. L, at 298.

     On November 12, 2015, one day before the deadline and the same day she filed the instant action, Plaintiff submitted her compensation claim as a Class Member, fifty percent of which was paid on December 7, 2015, in the amount of $44,684.52. TRO Order 3, ECF No. 42.

## PROCEDURAL BACKGROUND

     On November 12, 2015, Plaintiff filed this class action on behalf of herself and other members of the De Anza Class alleging: (1) a Federal § 1983 Claim for Violation of Procedural Due Process; and state law–based claims for: (2) Failure to Discharge a

Mandatory Duty; (3) Negligence Per Se; (4) Civil Conspiracy; (5) Aiding and Abetting; (6) Civil Conspiracy; (7) Aiding and Abetting; (8) Breach of Fiduciary Duty; (9) Professional Negligence; (10) Violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, et seq.); and (11) Fraud. Compl. Claims (1) through (5) are lodged against City Defendants; claims (6) and (7) against Gordon Rees Defendants; and claims (8) through (11) against Tatro and Bartolotta Defendants. *Id.* On December 5, 2014, Defendants answered. ECF No. 9.

On January 11, 2016, Plaintiff filed a motion for a temporary restraining order which sought to prohibit Defendants from: (1) evicting any members of the Proposed Class from the De Anza mobilehome park until the actual termination of tenancy for the Aglio Class (another group of De Anza Park residents); (2) closing De Anza Park until 30 days before the actual termination of tenancy for the Aglio Class; and (3) evicting any homeowners, tenants, residents and other occupants of De Anza park that are presently current on their rent until 30 days before the actual termination of the Aglio Class. TRO Mot. iv–v, ECF No. 32. On January 13, 2006, the Court denied Plaintiff's motion, finding that Plaintiff had failed to establish a likelihood of success on the merits, irreparable harm, that the balance of equities tipped in her favor, and that an injunction was in the public interest. *See* TRO Order 7–11, ECF No. 42.

Tatro Defendants and Bartolotta Defendants filed their respective motions to dismiss on December 30, 2015. ECF Nos. 21, 22. Gordon Rees Defendants filed their motion to dismiss on January 8, 2016. ECF No. 28. City Defendants filed their motion to dismiss on January 15, 2016. ECF No. 44. Plaintiffs responded to all four motions with one consolidated opposition on February 19, 2016. ECF No. 57. Defendants respectively replied on March 4, 2016. ECF Nos. 61, 63, 65, 66.

Meanwhile, City Defendants filed their motion to strike claims (2)–(5) under California's anti-SLAPP statute on January 25, 2016. ECF No. 50. Gordon Rees Defendants filed their motion to strike claims (6) & (7) under the anti-SLAPP statute on January 29, 2016. ECF No. 53. Plaintiffs responded to both motions with one consolidated

opposition on February 19, 2016. ECF No. 58. Defendants respectively replied on March 4, 2016. ECF Nos. 62, 64.

## DISCUSSION

### I.   Judicial Notice

All four Defendants filed requests for judicial notice of exhibits attached to their briefing. Specifically, Defendants request that the Court take judicial notice of the following documents:

1. June 22, 2007 Notice of Class Action;

2. 2008 Statement of Decision;

3. November 9, 2012 Special Master's Report Re: Report Re: (A) Rent Differential And (B) Date Class Membership Is Determined Re: Residents Evicted After September 4, 2007;

4. June 25, 2013 Special Master's Report re: Multiple Issues Pertaining to Closure of De Anza Cove Park;

5. February 2, 2014 Recommendation Of Special Master That Court Grant Approval to (A) Stipulation and Findings re: Class membership Eligibility and Certain Relocation Benefits and Order Thereon; (B) Order on Class Member Status of Certain Signed Settlement Agreements and Evictions Based on Evidence Presented at Trial;

6. February 2, 2014 Submission to the Court of the Special Master's Reports

7. May 30, 2014 Statement on Matter Under Submission;

8. June 18, 2014 Letter to the Court with attachments;

9. July 10, 2014 Objections to Plaintiffs' Proposed Judgment with attachments;

10. August 8, 2014 Reporter's Transcript;

11. August 20, 2014 Judgment;

12. September 9, 2014 Plaintiffs' Status Conference Brief and supporting exhibits (including compensation spreadsheet);

13. October 10, 2014 Excerpts from 58 page Reporter's Transcript;

8

14. October 16, 2014 Minute Order denying the De Anza Class' Motion for New Trial;

15. October 16, 2014 Amended Judgment;

16. October 16, 2014 Clerk's Certificate of Service by Mail;

17. November 13, 2014 Stipulated Fee Award;

18. November 14, 2014 Notice of Entry of Amended Judgment and summary thereof, including award of $7,719,510 in attorneys' fees, provided to the De Anza Class;

19. November 14, 2014 Mailing Report from Gilardi & Co LLC reflecting mail delivery of Notice of Entry of Amended Judgment to the De Anza Class;

20. December 1, 2014 Minute Order awarding costs;

21. November 12, 2015 Letter from Edwardo Martorell to De Anza Cove Class Action Claims Administration regarding *De Anza Cove Homeowners Association v. City of San Diego San Diego Superior Court, Case No. GIC 821191 Resident Homeowner Claim Form and Termination of Tenancy Agreement for our Client, DJ St Jon*;

22. Termination of Tenancy Agreement of DJ St. Jon.

*See* Tatro Mot. Exs; Bartolotta Mot. Exs.; Gordon Rees Mot. Exs; City Mot. Exs; City Strike Mot. Exs; Gordon Rees Strike Mot. Exs.

Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed matters of public record), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)). Courts have routinely taken judicial notice of records filed with the county recorder as well as pleadings filed with the state court. *See, e.g.*, *Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *Liebelt v. Quality Loan Serv. Corp.*, 2011 WL 741056, at *6 n. 2 (N.D. Cal. 2011); *Reynolds v. Applegate*, 2011 WL 560757, at *1 n.2 (N.D. Cal. 2011); *Giordano v. Wachovia Mortg., FSB*, 2010 WL 5148428, at * 1 n.2 (N.D. Cal. 2011).

Here, Plaintiff does not object to City Defendants' Request for Judicial Notice, and

the documents are publically recorded documents or publically available state court filings. Thus, the Court finds that the accuracy of these documents cannot reasonably be questioned. Accordingly, the Court **GRANTS** Defendants' requests for judicial notice of these documents.

In addition, Tatro Defendants request judicial notice of *Hernandez et al. v. Restoration Hardware, Inc.*, D067091, Super. Ct. No. 37-2008-00094395-CU-BT-CTL, a recent state appeals court decision. ECF No. 68. On a motion to dismiss, a court may take judicial notice of "the existence of [another court's] opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (citation omitted). Accordingly, the Court **GRANTS** Defendants' request for judicial notice of this opinion.

## II.    Motions to Dismiss

### a.    Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### b.   Federal Due Process Claim

Defendants make numerous arguments as to why Plaintiff's due process claim should be dismissed. Specifically, they argue that: (1) Plaintiff lacks standing; (2) the *Rooker-Feldman* doctrine bars consideration of Plaintiff's claim; (3) the claim is barred by collateral estoppel; (4) Plaintiff was not deprived of a constitutionally protected property interest; (5) Plaintiff's due process rights were not violated; and (6) Plaintiff's due process claim arises from the constitutionally protected activity of the City and therefore must be dismissed under California's Anti-SLAPP statute. *See* Tatro Mot. 9–17; Bartolotta Mot. 11–17; Gordon Rees Mot. 11–16; City Mot. 6–19. Because the Court concludes that Plaintiff lacks standing and that the *Rooker-Feldman* doctrine bars consideration of Plaintiff's claim, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's due process claim for lack of subject matter jurisdiction.

### i.   Standing

The "Article III 'case or controversy' requirement limits federal courts' subject matter jurisdiction by requiring, among other things, that plaintiffs have standing and that claims be 'ripe' for adjudication." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing is an integral component of subject matter jurisdiction. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541–43 (1986). As the Supreme Court stated in *Lujan v. Defenders of Wildlife*, 505 U.S. 555 (1992),

> The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61 (citations omitted). The party invoking federal jurisdiction bears the burden

15-cv-2552-GPC-JLB

of establishing these elements. *Id.* at 561 (citations omitted).

Here, Plaintiff's core problem is that they have not alleged an "injury in fact." Plaintiff argues that she has been injured in three ways: (1) deprivation of her "vested property and liberty interest" in a fairness hearing in state court regarding the attorneys' fees awarded to Class Counsel; (2) her eviction from her mobile home on January 13, 2016; and (3) the loss of her right to appeal the state court decision. *See* Compl. 13; Pl. Opp. 20. However, none of these alleged injuries amount to an injury in fact sufficient to support Article III standing.

### 1.    Attorneys' Fees

First, Plaintiff argues that she was deprived of a "vested property and liberty interest" by the failure to hold a fairness hearing in state court regarding the attorneys' fees awarded to Class Counsel. Compl. 13. Plaintiff argues that according to Cal. Rules of Court Rule 3.769, the state court was obligated to hold a fairness hearing regarding the award of attorneys' fees. However, Rule 3.769 explicitly states:

> **(a) Court approval after hearing**
> A settlement or compromise of an entire class action, or of a cause of action in a class action, or as to a party, requires the approval of the court after hearing.
> **(b) Attorney's fees**
> Any agreement, express or implied, that has been entered into with respect to the payment of attorney's fees or the submission of an application for the approval of attorney's fees must be set forth in full in any application for approval of the dismissal or settlement of an action that has been certified as a class action.

By its very terms, Rule 3.769 only applies where there has been a "settlement or compromise of an entire class action, or of a cause of action in a class action, or as to a party." As the Court's recitation of the facts above makes clear, this is not what happened in the state court case. Instead, the state court conducted a bench trial and rendered a judgment in favor of the De Anza Class, with damages calculated for each class member in accordance to a formula approved by the state court. Unsurprisingly, then, the state court directed that notice of entry of judgment be given to the class in accordance with Cal. Rules of Court Rule 3.771, the rule concerning class notice procedures pursuant to *judgment*, not

settlement. *See* Original Judgment 14; Amended Judgment 14.

Even if Plaintiff had not misconstrued these state procedural rules, however, Plaintiff would still not have suffered an injury in fact because Plaintiff cannot establish a vested property interest in the attorneys' fees at issue. As Defendants correctly point out, Class Counsel were not awarded attorneys' fees in the state court action out of a "common fund" or "pool" that included Plaintiff's damages. If that were the case, Plaintiff could credibly argue that a higher amount of fees awarded to Class Counsel diminished Plaintiff's own recovery. However, here, as recited in the facts, class member damages were calculated according to a formula established by the state court–appointed special master and refined by the state court in the 2014 Decision, *see* 2014 Decision 6–7; *see also* Class Compensation Spreadsheet, Tatro Mot., Ex. 5, while the attorneys' fees were awarded *in addition* to damages pursuant to a provision of the MRL, Cal. Civ. Code § 798.85 (awarding attorneys' fees and costs "[i]n any action arising out of the provisions of this chapter [to] the prevailing party").

In *Flannery v. Prentice*, the California Supreme Court considered the question of who attorneys' fees awarded to the "prevailing party" under Cal. Gov. Code § 12965, a provision of the California Fair Employment and Housing Act (FEHA), belonged to, as between the client and her attorney. *Flannery v. Prentice*, 26 Cal. 4th 572 (2001). After Flannery brought a successful FEHA suit against her former employer and damages of $250,000 and attorneys' fees of $1,088,231 were awarded, she brought an action in state court against her counsel in the FEHA action seeking, *inter alia*, a judicial declaration that she was entitled to the entire statutory fee awarded in the FEHA action. *Id.* at 576. The Court concluded that, for reasons of legislative intent and public policy,[1] "attorneys' fees awarded pursuant to section 12965 . . . belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them." *Id.* at 590 (observing that "were we

---

[1]Including encouraging representation of legitimate FEHA claimants, avoiding the unjust enrichment of plaintiffs, and ensuring fairness to defendants of FEHA suits by preventing an award of attorneys' fees effectively functioning as punitive damages. *Flannery*, 26 Cal. 4th at 579–87.

to interpret section 12965 as plaintiff urges . . . we would diminish the certainty that attorneys who undertake FEHA cases will be fully compensated, and to that extent we would dilute section 12965's effectiveness at encouraging counsel to undertake FEHA litigation . . . ultimately undermin[ing] the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices,'" *id.* at 583.).

Flannery's reasoning has since been extended to an award of attorneys' fees to a "successful party" under Cal. Civ. Proc. Code § 1021.5, which provides for fee awards in actions which "result[] in the enforcement of an important  right affecting the public interest." *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1502 (2006). Like the *Lindelli* court, this Court sees "no sound basis," and Plaintiff does not proffer one, to distinguish between § 798.85 and § 12965 when it comes to the matter of whether it is the client or the attorney who is entitled to a statutory award of attorneys' fees. Like the statutory fee award in FEHA, the statutory fee award in the MRL is designed to encourage "privately initiated lawsuits . . . essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions." *Flannery*, 26 Cal. 4th at 583 (quoting *Baggett v. Gates* 32 Cal.3d 128, 142 (1982)) (internal quotation marks omitted). Here, the California Legislature declared that the public policy vindicated by the MRL is that of "[providing] owners of mobilehomes occupied within mobilehome parks . . . with the unique protection from actual or constructive eviction afforded by the provisions of this chapter" "because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation." Cal. Civ. Code § 798.55.

As in *Flannery*, diminishing the certainty that attorneys who take MRL cases will be fully compensated would dilute § 798.85's effectiveness at encouraging counsel to undertake MRL litigation, ultimately undermining the Legislature's expressly stated purpose of the MRL to "provide[ mobilehome owners] with . . . unique protection from actual or constructive eviction" owing to their unique circumstances. Thus, the Court finds

that the attorneys' fees awarded to Class Counsel under § 798.55 "belong . . . to the attorneys who labored to earn them," and that Plaintiff thereby has no legally protected interest in those fees.

## 2.      Eviction

In her opposition, Plaintiff advances for the first time the argument that she and other class members have been injured "because their homes have either been or are in the process of being taken away." Pl. Opp. 20. However, Plaintiff provides no explanation for how she has a legally protected interest in avoiding eviction. As the recitation of facts makes clear, the evictions of the De Anza Class members did not result from any settlement or determination of attorneys' fees, but were directed as part of judgment of the case by the state court following a bench trial in which monetary compensation for the evictions was determined by that same court. As City Defendants point out, the Amended Judgment directed the City to "within ninety (90) days of entry of this judgment serve a twelve (12) month notice of Park closure on all homeowners and residents in the Park pursuant to Civil Code section 798.56(g)(2). . . [that] shall establish the date for all homeowners and residents to vacate the park and for the final and complete removal of all homes from the Park." Amended Judgment 8.  Plaintiff does not dispute that she received the notice, returned a Termination of Tenancy Agreement, and has already received approximately $44,684.52 in compensation. Thus, the terms of the compensation Plaintiff received and the timeframe of the eviction were set forth in the Amended Judgment, and have nothing to do with the Stipulated Fee Award and waiver of appellate rights Plaintiff has put at issue in the present case.

## 3.      Right to Appeal

In her opposition, Plaintiff also advances for the first time the argument that she and other class members have been injured "by the loss of their right to appeal," which she alleges "was bargained in exchange for these fees." Pl. Opp. 20. Plaintiff provides no authority for the proposition because there is none: the Supreme Court has repeatedly declined to recognize any constitutional right to an appeal in both civil and criminal cases.

*See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("There is, of course, no constitutional right to an appeal."); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 31 & n.4 (1987) (Stevens, J., concurring) (stating that Supreme Court precedents "do tend to support th[e] proposition" that "States are under no constitutional duty to provide for civil appeals").

### ii. *Rooker-Feldman* doctrine

The *Rooker–Feldman* doctrine is a "well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858–59 (9th Cir. 2008) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). "The clearest case for dismissal based on the *Rooker–Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* (quoting *Henrichs*, 474 F.3d at 613) (internal quotation marks omitted).

"However, *Rooker–Feldman* may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine 'prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment.'" *Id.* (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)). "A federal action constitutes such a de facto appeal where claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003)) (internal quotation marks omitted). "In such circumstances, 'the district court is in essence being called upon to review the state court decision.'" *Id.* (quoting *Feldman*, 460 U.S. at 483 n.16).

Here, the gravamen of Plaintiff's due process claim is that Plaintiffs should have been given a "fairness hearing" in accordance with Cal. Rules of Court Rule 3.769 in connection with the apportionment of attorneys' fees to class counsel. As the Complaint

alleges, "Rule 3.769 provided PLAINTIFFS with a procedure that entitled them to due process of law relating to the settlement of the DE ANZA ACTION and the apportionment of any attorneys' fees. . . . Although DEFENDANTS settled the DE ANZA ACTION, they did not present the matter for hearing and did not gain the Court's approval of the settlement . . . As a party to the settlement of the DE ANZA ACTION, Defendant City of San Diego was complicit in the failure to comply with Rule 3.769 and the PLAINTIFFS' deprivation of due process in that regard." Compl. 13.

As an initial matter, the Court observes that Plaintiff's assertion that Defendants "did not gain the Court's approval" of the "settlement" (i.e., the Stipulated Fee Award) is incorrect, since Plaintiff's own pleadings show that the state court approved the Stipulated Fee Award on November 13, 2014. *See* Compl., Ex. 10. More importantly, however, Plaintiff's pleadings demonstrate that there is no way for the Court to adjudicate Plaintiff's claim without "interpret[ing] the application of state laws or procedural rules," for it is precisely the *state court* that decided that notice of entry of judgment be given to the class in accordance with state procedural Rule 3.771, not Rule 3.769. Indeed, Plaintiff's allegation that the City's misdeed was being "complicit" in the decision not to apply 3.769 implicitly admits that it was the state court, not the City, which was responsible for deciding which state procedural rule applied to the dissemination of class notice. Thus, the Court concludes that the applicability of the *Rooker-Feldman* doctrine constitutes an independent ground upon which the Court lacks jurisdiction to consider Plaintiff's due process claim.[2]

---

[2] Plaintiff's citations to *Lance v. Dennis*, 546 U.S. 459 (2006), *Mitchum v. Foster*, 407 U.S. 225, 243 (1972), and *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2006) to challenge the application of *Rooker-Feldman* here are unavailing. Pl. Opp. 15–16. *Lance* held that *Rooker-Feldman* does not apply where the plaintiff in the federal case was in privity with, but not a party to, the underlying state court proceeding. 546 U.S. at 466. *Mitchum* did not address the *Rooker-Feldman* doctrine at all, but instead concerned the question of whether § 1983 claims fell within a specific exception of a federal anti-injunction statute barring federal courts from enjoining state court proceedings. 407 U.S. at 226. And *Exxon* held that *Rooker-Feldman* is not triggered when there are ongoing, parallel state and federal actions and judgment is entered in state court. 544 U.S. at 292. ("[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.").

### c.   Pendent Jurisdiction

The supplemental jurisdiction statute provides,

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Ninth Circuit has concluded that "[t]he statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("[I]f the federal claim [is] dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication. The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental. Therefore, the district court has no discretion to exceed the scope of its Article III power, and must dismiss the state law claims without prejudice." (quoting 16 James Wm. Moore et al., Moore's Federal Practice § 106.66[1])). In other words, "supplemental jurisdiction cannot exist without original jurisdiction . . . where there is no underlying original federal subject matter jurisdiction, the court has no authority to adjudicate supplemental claims under § 1367." *Id.* (citing *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485–86 (Fed. Cir. 1998); *Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

In *Herman*, the Ninth Circuit vacated a district court's order where the district court had concluded that it lacked admiralty jurisdiction over the federal claims, but nevertheless proceeded to exercise supplemental jurisdiction over the state-law claims, conducted a three-day bench trial, and entered judgment for defendants. *Id.* at 804. In so doing, the Ninth Circuit distinguished between the exercise of supplemental jurisdiction when the

federal claim has been dismissed under Rule 12(b)(1) as opposed to 12(b)(6), finding that "[a] dismissal on the merits is different from a dismissal on jurisdictional grounds. If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims." *Id.* at 806.

The Ninth Circuit concluded that since the district court lacked subject matter jurisdiction over the federal claims, it had no authority to exercise supplemental jurisdiction, because "[d]ismissal on jurisdictional grounds means that the court was without original jurisdiction and had no authority to do anything other than to determine its jurisdiction." *Id.*; *see also id.* ("If the court dismisses plaintiff's federal claims pursuant to [Fed. R. Civ. P.] 12(b)(1) [lack of subject matter jurisdiction], then supplemental jurisdiction can *never* exist. A Rule 12(b)(1) dismissal postulates that there was never a valid federal claim. Exercise of jurisdiction . . . would therefore violate Article III of the Constitution, because the original federal claim would not have substance sufficient to confer subject matter jurisdiction upon the court. Obviously, a district court has no discretion to exceed the scope of its Article III power." (citation omitted) (quoting *Musson Theatrical*, 89 F.3d at 1255) (internal quotation marks omitted)).

Since this Court has dismissed Plaintiff's sole federal claim under Rule 12(b)(1) on the basis of lack of subject matter jurisdiction, the Court therefore concludes that it lacks the authority to exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.*; *see also, e.g.*, *Langer v. Kacha*, No. 14-CV-2610-BAS(KSC), 2016 WL 524440, at *5 (S.D. Cal. Feb. 10, 2016) (dismissing state-law claims under *Herman* once the federal claim was dismissed for lack of subject matter jurisdiction); *ComUnity Collectors LLC v. Mortgage Elec. Registration Servs., Inc.*, No. C-11-4777 EMC, 2012 WL 3249509, at *1 (N.D. Cal. Aug. 7, 2012) (same); *Lopez v. Lassen Dairy, Inc.*, No. CV-F-08-121 LJO GSA, 2010 WL 4705521, at *2 (E.D. Cal. Nov. 12, 2010) (same). The Court thereby **DISMISSES** Plaintiff's state law claims without prejudice.

//

### III.   Motions to Strike

Defendants argue that even if Plaintiff's state law claims are dismissed, Defendants' anti-SLAPP motions to strike are not mooted because the California anti-SLAPP law provides for mandatory attorneys' fees. City Strike Mot. 7. City Defendants cite *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) for the proposition that "the issue of attorney fees and costs is not rendered moot by a dismissal." *Id.* However, in *Robinson*, the federal claim was dismissed under Rule 12(b)(6), not Rule 12(b)(1), so the district court had discretion to consider defendant's anti-SLAPP motion to strike the plaintiff's state law claims. *See Robinson*, 875 F. Supp. 2d at 1050 ("[A] Rule 12(b)(6) Motion does not moot an anti-SLAPP motion to strike."); *see also Bhambra v. True*, 2010 WL 1758895 at *2 (N.D. Cal., April 30, 2010) (considering a motion to strike after having dismissed Plaintiff's claims under Rule 12(b)(6)). However, as discussed above, when the federal claims in a case are dismissed under Rule 12(b)(1) rather than 12(b)(6), a district court lacks the authority to exercise supplemental jurisdiction over Plaintiff's state law claims. *Herman*, 254 F.3d at 807 ("Once the district court reache[s] the conclusion that it ha[s] no underlying original subject matter jurisdiction, there [i]s nothing left to do but to dismiss the case." (footnote omitted) (citations omitted)). The Court thus **DENIES** Defendants' motions to strike as moot.

### IV.   Leave to Amend

Fed. R. Civ. P. 15 provides that courts should freely grant leave to amend "when justice so requires." Amendment may be denied, however, if amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182. Here, it is apparent from the Court's analysis of its lack of subject matter jurisdiction that granting leave to amend would be futile because Plaintiff cannot cure her lack of standing or the applicability of the *Rooker-Feldman* doctrine to her federal claim. Thus, the Court **DENIES** Plaintiff leave to amend.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motions to Dismiss, ECF Nos. 21, 22, 28, and 44, are

20

**GRANTED**;

2.     Defendants' Motions to Strike, ECF Nos. 50 and 53, are **DENIED** as moot;

3.     Plaintiff's federal due process claim is **DISMISSED WITH PREJUDICE**;

4.     Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**;

5.     Plaintiff is **DENIED** leave to amend.

**IT IS SO ORDERED.**

Dated:  March 23, 2016

Hon. Gonzalo P. Curiel
United States District Judge